**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 21-10228 |
| LUCKIN COFFEE INC. (IN PROVISIONAL LIQUIDATION), | Chapter 15 |
| Debtor in a Foreign Proceeding. | |

---

### OBJECTION OF THE WINSLOW PLAINTIFFS TO THE MOTION OF THE FOREIGN REPRESENTATIVES FOR CHAPTER 15 RECOGNITION AND FINAL RELIEF

---

**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
T: 212-262-6700
F: 212-262-7402

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

BACKGROUND………………………………………………………………………….5

OBJECTION……………………………………………………………………………….8

   I.    THE REQUESTED RELIEF SHOULD BE DENIED……………………………......8
       A.  The Automatic Stay Provisions of Section 362 Do Not Apply Automatically
          to Nondebtors like the Underwriter Defendants…………………………………..9
       B.  No "Unusual Circumstances" Justify Extension of the Automatic Stay to
          the Nondebtor Underwriter Defendants…………………………………………10

RESERVATION OF RIGHTS……………………………………………………………..19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ............................................................................. 11, 19

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
  116 B.R. 31 (S.D.N.Y. 1990)................................................................................... 20

*DeSouza v. PlusFunds Grp., Inc.*
  No. 05 CIV. 5990 RCCJCF, 2006 WL 2168478,  (S.D.N.Y. Aug. 1, 2006)...................... 13, 17

*Globus v. L. Rsch. Serv., Inc.*,
  418 F.2d 1276 (2d Cir. 1969)................................................................................. 17

*Holland v. High Power Energy*,
  248 B.R. 53 (S.D.W. Va. 2000) ............................................................................. 15

*In re Crazy Eddie Sec. Litig.*,
  104 B.R. 582 (E.D.N.Y. 1989) .............................................................................. 16

*In re First Cent. Fin. Corp.*,
  238 B.R. 9 (Bankr. E.D.N.Y. 1999)......................................................................... 16

*In re FPSDA I, LLC*,
  No. 10-75439, 2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012), *as corrected* (Dec. 26,
  2012). .................................................................................................... passim

*In re JSC BTA Bank*,
  434 B.R. 334 (Bankr. S.D.N.Y. 2010) ...................................................................... 11

*In re Pitts*,
  No. 808-74860-REG, 2009 WL 4807615 (Bankr. E.D.N.Y. Dec. 8, 2009)............................ 14

*In re SDNY 19 Mad Park, LLC*,
  No. 14-11055 (ALG), 2014 WL 4473873 (Bankr. S.D.N.Y. Sept. 11, 2014)................... 15, 19

*In re Uni-Marts, LLC*,
  399 B.R. 400 (Bankr. D. Del. 2009) ....................................................................... 15

*In re United Health Care Org.*,
  210 B.R. 228 (S.D.N.Y. 1997)............................................................................... 11

*In re W.R. Grace & Co.*,
  No. 01-01139(JKF), 2004 WL 954772 (Bankr. D. Del. Apr. 29, 2004) ................................. 11

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*,
  No. 13 CIV. 4650 JFK, 2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) ................................. 14

*Lucas v. Dynegy, Inc. (In re Dynegy, Inc.)*,
  770 F.3d 1064 (2d Cir. 2014) ........................................................................................... 13

*Manson v. Friedberg*,
  No. 08 CIV. 3890 RO, 2013 WL 2896971 (S.D.N.Y. June 13, 2013) ................................. 14

*Mardice v. Ebony Media Operations, LLC*,
  No. 19-CV-8910 (VSB), 2021 WL 146358 (S.D.N.Y. Jan. 15, 2021) ................................. 19

*McCartney v. Integra Nat. Bank N.*,
  106 F.3d 506 (3d Cir. 1997) ............................................................................................. 11

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  564 B.R. 192 (S.D.N.Y. 2016) ................................................................................. 13, 18

*Queenie, Ltd. v. Nygard Int'l*,
  321 F.3d 282 (2d Cir. 2003) ............................................................................................. 11

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) ................................................................................... 13

*Teachers Ins. & Annuity Assn. v. Butler*,
  803 F.2d 61 (2d Cir. 1986) ............................................................................................... 13

*Teran v. Subaye, Inc.*,
  No. 11 CIV. 2614 NRB, 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ................................. 7

*Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.*,
  No. 99 CIV. 3005 (DLC), 2000 WL 640653 (S.D.N.Y. May 17, 2000) ................................. 16

**Statutes**

11 U.S.C. § 1502(8) ............................................................................................................... 12

11 U.S.C. § 1508 ................................................................................................................... 11

11 U.S.C. § 1520 ................................................................................................................... 12

11 U.S.C. § 541(a) ................................................................................................................. 11

**Other Authorities**

Didi Hu, *Cross-Border Insolvency Regime in China: Finding the Most Pragmatic Interim Solution for Globalized Companies Under Localized Practices*,
92 Am. Bankr. L.J. 523, 534 (2018) .......................................................................................... 7

Nuveen Winslow Large-Cap Growth ESG Fund, Nuveen Winslow Socially Aware U.S. Large-Cap Growth Fund, Winslow Large-Cap Growth Fund, MainStay Winslow Large Cap Growth Fund, MainStay VP Winslow Large Cap Growth Portfolio, St. John's University, I.B.E.W. Local Union 481 Defined Contribution Plan and Trust, St. Mary's University, Justin Kelly Revocable Trust, Justin and Susan Kelly Family, LLC, The Justin and Susan Kelly Foundation, Justin Kelly, individually and as a representative of the Justin Kelly Revocable Trust, and American Medical Association (collectively, the "Winslow Plaintiffs"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* [Docket No. 3] (the "Motion"),[1] insofar as it seeks a stay of the U.S. Litigation against the Underwriter Defendants (as defined below).[2]  In support of this Objection, the Winslow Plaintiffs respectfully state as follows:

### PRELIMINARY STATEMENT

1.      This matter involves a Foreign Debtor, Luckin Coffee Inc. ("Luckin") who engaged in widespread, admitted, and extremely damaging fraud targeted at United States ("U.S.") investors.  Luckin's fraud involved two separate issuances of American Depository Securities ("ADS") which occurred via a group of underwriter banks, including Credit Suisse, who acted as lead underwriter.  The Winslow Plaintiffs are investment funds and other entities connected to

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.  Citations to "Foreign Rep. Br." are to the *Memorandum of Law in Support of Verified Petition of the Foreign Representatives for Recognition of Foreign Main Proceeding and Certain Related Relief* filed February 5, 2021 [Docket No. 4].

[2] Based on their current understanding of Luckin, Luckin's status and operations, the Winslow Plaintiffs do not currently object to Luckin's requested relief of recognition of the Cayman Proceedings as a "main" proceeding, as opposed to "nonmain."  The Winslow Plaintiffs reserve the right to bring up such an objection at the hearing should the facts and equities, and any additional disclosures in connection with either, warrant, at that time.

Winslow Management who purchased Luckin ADSs in the United States, directly from Credit Suisse, traceable to offerings supported by other underwriters, and in the open market. On April 1, 2020, Luckin admitted a massive fraud had been perpetrated on U.S. investors, and its ADS price plummeted, resulting in well over $100 million of damages to the Winslow Plaintiffs.

2.      On October 9, 2020, the Winslow Plaintiffs initiated an action in New York state court[3] to recover the more than $100 million in investment losses they suffered as a result of Luckin's admitted fraud, and as a result of the particular actions of lead underwriter Credit Suisse, as well as statutory liability claims as to additional underwriters who underwrote Luckin's May 17, 2019 IPO and January 15, 2020 Secondary Offering.[4] Relevant here, the Winslow Plaintiffs have brought fraud and negligent misrepresentation claims against Credit Suisse with respect to Credit Suisse's own actions and duties to the Winslow Plaintiffs.

3.      On February 19, 2021, Credit Suisse and the other (domestic) Underwriter Defendants moved to dismiss the Winslow Plaintiffs' claims; per the rules of the New York

---

[3] *Nuveen Winslow Large-Cap Growth SEG Fund, et al. v. Lu et al.*, Index No. 655177/2020 (Sup. Ct. N.Y.). *See* Verified Petition at 12. Referred to herein as the "Winslow Action." A copy of the Winslow Plaintiffs' operative complaint is attached to the Motion as the Martin Decl., Ex. 4D.

[4] In addition to Luckin, the Winslow Plaintiffs named as Defendants Charles Zhengya Lu ("Lu"), Jenny Zhiya Qian ("Qian"), Jian Liu ("Liu"), Reinout Hendrik Schakel ("Schakel"), Jinyi Guo ("Guo"), and current and former Luckin directors Hui Li, Erhai Liu, Sean Shao, and Thomas P. Meier (the "Director Defendants" and, collectively with Lu, Qian, Liu, and Schakel, the "Individual Defendants") (Luckin and the Individual Defendants referred to collectively herein as the "Luckin Defendants"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), China International Capital Corporation Hong Kong Securities Limited ("CICC"), Haitong International Securities Company Limited ("Haitong"), Morgan Stanley & Co. LLC ("Morgan Stanley"), KeyBanc Capital Markets Inc. ("KeyBanc"), and Needham & Company, LLC ("Needham" and, with Credit Suisse, CICC, Haitong, KeyBanc, and Morgan Stanley, the "Underwriter Defendants," with the Underwriter Defendants and the Luckin Defendants collectively referred to herein as the "Securities Action Defendants"). The Underwriter Defendants are incorrectly referred to in the Verified Petition as the "Underwriter Indemnitees" when no absolute indemnity right has been established for their conduct.

Commercial Division, this also has the effect of staying discovery.[5]  Briefing on those motions will not be complete until at least April 22, 2021.

4.      On February 5, 2021, the Foreign Representatives filed the instant Motion, seeking, among other things, chapter 15 recognition of Luckin's Cayman Island provisional liquidation proceeding as a "foreign main proceeding," and, upon such recognition, relief in the form of a stay of all litigation here in the United States, including the Winslow Action, against Luckin and certain non-debtor "Indemnified Parties," including the Underwriter Defendants and the Individual Defendants.  The Foreign Representatives' request to extend the stay as to the Underwriter Defendants should be denied.

5.      The automatic stay under Section 362 of the Bankruptcy Code is not applicable, as a matter of law, to the Underwriter Defendants (or the Individual Defendants), and the Foreign Representatives have not remotely met their burden of proving that extension of the automatic stay to the non-debtor Underwriter Defendants – an extraordinary remedy available only in "unusual circumstances" – is warranted.  Indeed, the Foreign Representatives' argument for extension of the stay focuses on one fact:  the underwriting agreements entered into in connection with the IPO and Secondary Offering obligate Luckin to indemnify the Underwriter Defendants in certain instances.  That is not an unusual circumstance; indeed, it is the circumstance of effectively every underwritten offering of securities in the United States.  Nor is this circumstance "unusual" in the sense that not to stay would have an "immediate, adverse" impact of Luckin's attempt to restructure – the Winslow Plaintiffs action against the Underwriter Defendants is in a relatively

---

[5] Underwriters Haitong and CICC are Hong Kong based and have refused to accept service via counsel.  The Winslow Plaintiffs are actively seeking to serve them in Hong Kong.  The Individual Defendants have not yet been served in the Winslow Plaintiffs action, and many are resident in the People's Republic of China ("PRC") and are subject to long service delays, if service occurs at all under the appropriate Hague Convention.

early stage, and continued litigation will have effectively *no* impact on Luckin's restructuring.

6.      Luckin's contractual indemnity liability to the Underwriter Defendants for specific claims and issues is wholly separate and independent from the Underwriter Defendants' liability to the Winslow Plaintiffs for their violations of the U.S. securities laws and state common law. Any claim that the Underwriter Defendants may ultimately have against Luckin would be litigated as between *those* parties based on issues relating to the scope and terms of the indemnity – issues entirely separate and distinct from the allegations in the Winslow Action.  As such, permitting the Winslow Action to proceed against the Underwriter Defendants would have no immediate impact on the Cayman Proceeding or the "bankruptcy estate."

7.      Nor, as a practical matter, will continued litigation of the Winslow Action as to the Underwriter Defendants have any meaningful impact on Luckin's attempts at restructuring, whether successful or unsuccessful.  There is effectively no chance that the Foreign Debtor will still be attempting a restructuring by the time the Winslow Action against the Underwriter Defendants reaches the point of judgment.  A successful restructuring will occur long before such a result, and the case of an unsuccessful restructuring (i.e., a liquidation) would simply lay bare that the Winslow Plaintiffs will be left to their claims against the Underwriter Defendants.  Further, Luckin's lack of actual property in the U.S. (beyond two law firm retainers and perhaps assorted claims) belies *any* concern that the Underwriter Defendants, even if they somehow sued and achieved judgment against Luckin on the limited indemnities they have, would be able to interrupt the restructuring process sans a stay.

8.      Based on the foregoing and for the additional reasons set forth below, the relief of

a stay as to the Underwriter Defendants requested in the Motion should be denied.[6]

## **BACKGROUND**

9.      The underlying reason that Luckin finds itself in this Court is a case of admitted, massive, fraud, perpetrated by the highest ranking executives at Luckin for the purpose of extracting over a billion dollars from U.S. investors – money which was promptly transferred to the PRC and is now effectively impossible for Luckin's defrauded shareholders to access via judgment.[7] The Underwriter Defendants facilitated the sale of Luckin securities to U.S. investors, and benefited handsomely from doing so, to the tune of tens of millions of dollars in fees, plus tens of millions more gained by selling inflated Luckin stock to investors that the Underwriters purchased per their "greenshoe" options in the IPO and Secondary Offering.   The Winslow Plaintiffs purchased Luckin ADS in the U.S., including millions of shares directly from the lead Underwriter, and are one of the single largest defrauded investors.

10.      The Winslow Plaintiffs filed the Winslow Action – which was commenced by the filing of a complaint in New York Supreme Court on October 9, 2020, later amended on December 30, 2020 (the "Amended Complaint") (*see* Martin Decl., Ex. 4D) – asserting claims for fraudulent

---

[6] The Winslow Plaintiffs further reserve the right to bring up such an objection at the hearing should the facts and equities, and any additional disclosures in connection with either, warrant, at that time.

[7] *See generally Teran v. Subaye, Inc.*, No. 11 CIV. 2614 NRB, 2011 WL 4357362, at *7 (S.D.N.Y. Sept. 16, 2011) ("[T]he PRC does not have treaties with the U.S. providing for the reciprocal recognition and enforcement of judgments of courts. As a result, it may not be possible for investors in the U.S. to enforce their legal rights, to effect service of process upon our directors or officers or to enforce judgments of U.S. courts predicated upon civil liabilities and criminal penalties of . . . directors and officers under federal securities laws."); *see also* Didi Hu, *Cross-Border Insolvency Regime in China: Finding the Most Pragmatic Interim Solution for Globalized Companies Under Localized Practices*, 92 Am. Bankr. L.J. 523, 534 (2018) ("Absent treaty obligations, reciprocity is the last resort for foreign courts or representatives to get foreign proceedings recognized in China.").

misrepresentation, negligent misrepresentation, and violations of the Securities Act of 1933 against the Securities Action Defendants, including Luckin and the Underwriter Defendants.

11.    In support of those claims, the Amended Complaint alleges, *inter alia*, that to gain the interest of U.S. investors and drive up the price of its securities, the Securities Action Defendants publicly reported eye-popping revenue and sales numbers, and promised meteoric growth, all of which (unbeknownst to the Winslow Plaintiffs and the market) were a (now admitted) brazen lie.  As has now been revealed in Luckin's extensive admissions – and confirmed through detailed reporting by the *Wall Street Journal* and others – the Individual Defendants along with three dozen other employees began falsifying sales to meet Luckin's aggressive guidance and growth targets by engineering fake transactions, starting no later than the month before Luckin's IPO, which sold over $500 million of stock to unsuspecting U.S. investors (pricing at $17 per ADS).  The fraudulent behavior only intensified in support of Luckin's Secondary Offering, which raised over $400 million from investors (pricing at $42 per ADS, less than a year after the IPO), and another $400 million from convertible note buyers.  All of these transactions were arranged by the Underwriter Defendants.

12.    Because of the undisclosed fraudulent scheme, Luckin has *never* filed an accurate financial statement in the United States, and both Registration Statements issued in connection with Luckin's public offerings were materially false and misleading.

13.    In addition, Credit Suisse made numerous other misstatements *directly* to the Winslow Plaintiffs to induce their investment.  These statements by Credit Suisse, by *themselves*, were knowingly or recklessly false, and failed to disclose – and indeed covered up – Luckin's sales fabrication scheme.

14.    Further, unbeknownst to the Winslow Plaintiffs at the time, Credit Suisse had a

significant financial incentive to induce the Winslow Plaintiffs to invest in Luckin and keep the price of Luckin's ADSs artificially inflated by misrepresenting Luckin's true financial position because, four months prior, Credit Suisse and others had made a $500 million margin loan to Luckin co-founder Charles Lu that was secured by his Luckin stock. Therefore, if the trading price of Luckin's ADSs fell below $14.55 per share – at the time of the loan the ADSs were trading at nearly $30 – Lu would default and the entire loan, plus interest and fees, would be immediately payable, resulting in the inability for Credit Suisse to recoup its loan.

15.    When the true facts about Luckin's falsified revenues and widespread fabrication of sales emerged, the market's reaction was swift and brutal. Luckin ADS prices collapsed, falling nearly 85% over a period of just days. Luckin was halted, and then delisted from NASDAQ. The Winslow Plaintiffs suffered in excess of $100 million in investment losses as a result of this fraud prompting commencement of the Winslow Action.

16.    Following commencement of the Winslow Action, and the filing of the Amended Complaint, on January 25, 2020, the New York Supreme Court so-order a stipulation between the Winslow Plaintiffs, Luckin, and Credit Suisse, Morgan Stanley, and KeyBank (the "Domestic Underwriter Defendants") in which Luckin and the Domestic Underwriter Defendants agreed to accept service of the Amended Complaint and to a deadline of February 19, 2021 for the Foreign Debtor and the Domestic Underwriter Defendants "to move against, answer, or otherwise respond to the Amended Complaint." (*See* Declaration of Richard A. Bodnar in Support of the Objection of the Winslow Plaintiffs to the Motion of the Foreign Representative for Chapter 15 Recognition

and Final Relief ("<u>Bodnar Decl.</u>"), Ex. A.).[8]

17.     On February 5, 2021, the Foreign Representatives filed the instant Chapter 15 petition, seeking recognition of the Cayman Proceeding, and seeking a stay of all litigation in the United States, including the Winslow Action against Luckin.  The filing also seeks a stay as to parties indemnified by Luckin for certain claims, including the Underwriter Defendants.  The filing does not incorporate the indemnification agreement at issue.

18.     On February 17, 2021, the New York Supreme Court so-ordered a stipulation between the Winslow Plaintiffs and Luckin extending the deadline for Luckin "to move against, answer, or otherwise respond to the Amended Complaint" to March 30, 2021.  No similar stipulation was entered into with respect to any of the Underwriter Defendants.  (Bodnar Decl., Ex. B.).  As the Individual Defendants have not yet appeared in the Winslow Action, the stipulation also did not apply to them.

<b><u>OBJECTION</u></b>

## I.    <u>THE REQUESTED RELIEF SHOULD BE DENIED</u>

19.     In the event that the Court enters an order recognizing the Cayman Proceeding as a foreign main proceeding, the Foreign Representatives seek, among other things, relief in the form of an extension of the automatic stay under section 362 of the Bankruptcy Code to the non-debtor "Indemnified Parties," which it defines to include the Underwriter Defendants and the Individual Defendants (Motion ¶ 5(b); Verified Petition ¶ 37.)  Because such an extension of the stay to the Underwriter Defendants is unwarranted, unnecessary, and prejudicial to the Winslow Plaintiffs, this Court should deny this requested relief.

---

[8] The Winslow Plaintiffs are in the process of serving other Defendants, in particular, the Underwriter Defendants based in Hong Kong whose counsel has not been authorized to accept service despite multiple requests.

A.    **The Automatic Stay Provisions of Section 362 Do Not Apply Automatically to Nondebtors like the Underwriter Defendants**

20.    As an initial matter, the Foreign Representatives' Motion and supporting brief ignore  key distinctions between an ancillary chapter 15 bankruptcy proceeding, such as this one, and primary bankruptcy proceedings brought pursuant to chapters 11 or 13.  Indeed, *none* of the cases relied upon by the Foreign Representatives in support of their argument for extension of the stay to the Underwriter Defendants involve actions, like the present action, commenced under chapter 15.[9]  That context is important.  "[C]hapter 15 invokes the jurisdiction of the bankruptcy court to ***assist*** in the administration of a foreign insolvency or restructuring proceeding" for the purpose of "foster[ing] the orderly administration of cross-border restructurings.  *In re JSC BTA Bank*, 434 B.R. 334, 340 (Bankr. S.D.N.Y. 2010) (emphasis added).  Unlike with chapter 11, "commencement of a chapter 15 case does not create an 'estate'" "consisting of all of a debtor's property, 'wherever located and by whomever held'" or trigger an automatic stay.  *Id.* at 341 (quoting 11 U.S.C. § 541(a)).  In their motion the Foreign Representatives cite *no* case, from any Circuit, extending a Chapter 15 stay to non-debtor defendants over an objection.

21.    Instead, in a chapter 15 case, the bankruptcy court acts as an auxiliary to the foreign main proceeding (once recognized) to ensure the fair and efficient administration of cross-border insolvencies.  *Id.*; *see also* 11 U.S.C. § 1508 ("In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions.").  It is only "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . [that] sections 361 and

---

[9] *See* Foreign Rep. Br. at 23-24; *see, e.g.*, *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 288 (2d Cir. 2003) (Chapter 11); *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (Chapter 13); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (Chapter 11); *In re United Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997) (Chapter 11); *In re W.R. Grace & Co.*, No. 01-01139(JKF), 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004) (Chapter 11).

362[, including the automatic stay described therein,] apply *with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States*." 11 U.S.C. § 1520 (emphasis added).[10]

22.    Thus, at present, there is no "automatic stay" in place as to *any* of the Securities Action Defendants.  While Luckin and the Winslow Plaintiffs have agreed to an extension of *Luckin's* time "to move against, answer, or otherwise respond to the Amended Complaint" to March 30, 2021, there is no similar extension that applies, by operation of law or otherwise, to the Underwriter Defendants.  (Bodnar Decl., Ex. B.)

23.    Assuming this Court enters an order recognizing the Cayman Proceeding as a foreign main proceeding, the automatic stay would apply *only* to Luckin, as the Foreign Debtor, and its United States assets, which are effectively non-existent, consisting of "a $500,000 retainer on deposit with DLA Piper LLP (US) in which the Foreign Debtor has an ownership interest . . . held in a Citbank N.A. bank account in New York" and "a $75,000 retainer with its counsel Davis Polk & Wardwell LLP . . . held in an account at JP Morgan Chse Bank in Delaware."  (Lawson Decl., ¶ 8 & n.3.)  It would not "automatically" apply to the non-debtor Underwriter Defendants. And the Winslow Plaintiffs respectfully submit there is no basis to deviate from the automatic stay provision here.

**B.    No "Unusual Circumstances" Justify Extension of the Automatic Stay to the Nondebtor Underwriter Defendants**

24.    Section 362(a) is limited, by its terms, to "proceeding[s] against the debtor." Consistent with that plain language, the Second Circuit has long recognized that "stays pursuant to

---

[10] "'[W]ithin the territorial jurisdiction of the United States' . . . refers to tangible property located within the territory of the United States and intangible property deemed under applicable nonbankruptcy law to be located within that territory . . . ."  11 U.S.C. § 1502(8).

§ 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Assn. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  In fact, in securities fraud actions, courts in this Circuit regularly continue proceedings against nonbankrupt defendants after a corporate defendant has declared bankruptcy.  *See, e.g., Lucas v. Dynegy, Inc. (In re Dynegy, Inc.)*, 770 F.3d 1064, 1066 (2d Cir. 2014) (bankruptcy of corporate defendant "prompted an automatic stay of the securities class action in the district court as to Dynegy Inc. but not the three individual defendants"); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 564 B.R. 192, 194 (S.D.N.Y. 2016) (refusing to extend stay to nonbankrupt co-defendants, including underwriters); *accord Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 789 (S.D.N.Y. 1997) (Section 11 securities fraud case, applying stay to debtor, but not staying case "with regard to the Underwriter defendants.").

25.     "[E]xtensions of the [Section 362(a)] stay to protect non-debtor parties," while permitted, "are the exception, not the rule, and are generally not favored."  *See In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012), *as corrected* (Dec. 26, 2012).  The "mere existence of an indemnification obligation on the part of the Debtors is not alone enough to extend the protections of the automatic stay to a non-debtor." *Id*. at *11.  Similarly, even in the more encompassing Chapter 11 context, "[t]he mere possibility of a future indemnification claim will not support application of the automatic stay . . . ."  *New Jersey Carpenters,* 564 B.R. at 195; *accord DeSouza v. PlusFunds Grp., Inc.*, No. 05 CIV. 5990 RCCJCF, 2006 WL 2168478, at *3 (S.D.N.Y. Aug. 1, 2006) (refusing to impose stay on nondebtors in more expansive Chapter 11 context, even where nondebtors had indemnification rights as to debtor).

26.     A "narrow exception" exists where "'unusual circumstances' bind the interests of the debtor and nondebtor so that 'a judgment against the [nondebtor] defendant will in effect be a

judgment or finding against the debtor.'" *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 CIV. 4650 JFK, 2014 WL 4783008, at *2 (S.D.N.Y. Sept. 25, 2014) (citation omitted); *see also Manson v. Friedberg*, No. 08 CIV. 3890 RO, 2013 WL 2896971, at *4 (S.D.N.Y. June 13, 2013) ("[T]he automatic stay provisions do not apply to proceedings against non-bankrupt co-defendants absent unusual circumstances . . . ."). "The crux of this exception . . . is whether there are 'strong ties' between the nondebtor and the debtor such that a judgment against the nondebtor 'will have an *immediate* adverse economic consequence for the debtor's estate' or the liability of the nondebtor will be imputed to the debtor by operation of law [emphasis added]." *Le Metier Beauty*, 2014 WL 4783008, at *2 (quoting *Queenie*, 321 F.3d at 287); *cf. In re Pitts*, No. 808-74860-REG, 2009 WL 4807615, at *6 (Bankr. E.D.N.Y. Dec. 8, 2009) (requiring "immediate adverse economic consequence for the debtor's estate" and finding that no extension of the stay was warranted).

27.    That exception does not apply here.  In arguing to the contrary, the Foreign Representatives contend that "[s]taying the U.S. Litigation against the Foreign Debtor alone is insufficient to protect it because the Foreign Debtor is contractually obligated to indemnify the Indemnified Parties" (Foreign Rep. Br. at 24), and that a stay of the U.S. Litigation is necessary to allow "the Foreign Debtor [to] complete negotiation of the Schemes[ – two contemplated schemes of arrangement . . . with two different groups of creditors –] and submit them to the Cayman Court for sanction," at which point those Schemes will be presented to "this Court for recognition and enforcement within the territorial jurisdiction of the United States." (Verified Petition ¶ 1.) Luckin provides *no* record evidence, or even conjecture, on why a stay extending to the Underwriter Defendants in the Winslow Action, or to U.S. Litigation generally, will *prevent* Luckin from completing negotiation of its scheme or schemes.

28.     The Foreign Representatives are wrong in contending they have a right or reason to extend the stay and have not met their burden of showing by "clear and convincing evidence" that extension of the stay to nonbankrupt Underwriter Defendants is warranted. *FPSDA I, LLC*, 2012 WL 6681794, at *8 ("[T]he movant must show by 'clear and convincing evidence' that extension of the stay is warranted.").

29.     *First*, a debtor's mere indemnification obligation to a nondebtor is insufficient to justify extension of the automatic stay to nondebtors. *See, e.g.*, *In re SDNY 19 Mad Park, LLC*, No. 14-11055 (ALG), 2014 WL 4473873, at *2 (Bankr. S.D.N.Y. Sept. 11, 2014) ("[T]he Debtor fails to show that any indemnification rights that [nondebtor third-party] may have should result in a stay of the actions against him."); *In re Uni-Marts, LLC*, 399 B.R. 400, 417 (Bankr. D. Del. 2009) (fact that non-debtor was owed indemnity by debtor for any losses was insufficient to extend automatic stay protections to  non-debtor); *Holland v. High Power Energy*, 248 B.R. 53, 59 (S.D.W. Va. 2000) ("Notwithstanding the indemnification agreement between the parties, it cannot be said that the interests of [debtor and nondebtor] are closely intertwined" such that extension of the automatic stay is warranted).  Indeed, "because the justification for extending the stay 'must be consistent with the purpose of the stay itself, [which is] to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts,'" indemnification obligations alone are not enough.  *In re SDNY 19*, 2014 WL 4473873, at *2 (quoting *In re FPSDA I, LLC*, 2012 WL 6681794, at *11 and *In re Uni–Marts, LLC*, 399 B.R. at 400).

30.     The Foreign Representatives do not (because they cannot) explain anywhere in the Motion or the accompanying briefing how refusing to extend the stay to the Underwriter Defendants would impact their negotiation of the Schemes or otherwise impact the day-to-day operations in the Cayman Proceeding.  (*See* Verified Petition ¶ 1.)   Indeed, the cases that have

extended the stay to protect nondebtors over concerns that the litigation would divert time and attention away from reorganization "involve[] very large, complex reorganizations, [where] the litigation sought to be stayed presented very formidable discovery and other demands, together with very large numbers of potential claimants. [Such that], to allow the litigation to proceed . . . would be so burdensome that the principals [of the debtor] would hardly be able to devote the needed time and attention to the debtors' reorganization." *In re FPSDA I*, 2012 WL 6681794, at *15; *see also In re First Cent. Fin. Corp.*, 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999) (noting that cases extending protections of automatic stay involve numerous lawsuits pending against debtors' officers and directors which would have resulted in "massive depletion of estate assets and inhibited key personnel from the important business of getting the corporate debtor back on its feet"). Here, the nondebtor Underwriter Defendants have no role in the day-to-day negotiation of the Schemes or in the Cayman Proceeding and their involvement in the U.S. Litigation would not be an imposition to, or an have an immediate adverse consequence on, the Cayman Proceeding.[11]

31.    Moreover, the liability of the Underwriter Defendants in the Winslow Action is not derivative of the liability of the Foreign Debtor, and the "unusual circumstances" exception "[does] not extend" to "situations where a codefendant is independently liable." *Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.*, No. 99 CIV. 3005 (DLC), 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000); *see also In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 584 (E.D.N.Y. 1989) (same). Here, the Winslow Plaintiffs assert direct claims against the nonbankrupt Underwriting Defendants for their own fraudulent acts, including fraudulent misrepresentation, negligent misrepresentation, and statutory violations of Sections 11 and 12(a)(2) of the Securities Act against Underwriter

---

[11] Luckin's Foreign Representatives, the Joint Provisional Liquidators, and not any of the named Defendants, are in control of the company at the moment, and in fact the individuals with whom restructuring discussions are being held. They are not defendants in the Winslow Action.

Defendant Credit Suisse, as well as violations of Section 11 against the remaining Underwriter Defendants. (*See* Martin Decl., Ex. 4D (Counts I through IV).) A "stay clearly cannot be extended to the non-debtor" under the unusual-circumstances test "where the debtor and non-debtor co-defendant 'are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty." *DeSouza*, 2006 WL 2168478, at *3 (citation omitted). Interpreting the indemnity here as effectively "absolute" or even applicable to the Winslow Plaintiffs' claims – before those claims are litigated and before the Underwriter Defendants and Luckin join issue with each other – is not warranted. Nor is this a red herring: "It is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct." *Globus v. L. Rsch. Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969). "Congress intended to impose a 'high standard of trusteeship' on underwriters. . . . Thus, what Professor Loss terms the 'in terrorem effect' of civil liability [] might well be thwarted if underwriters were free to pass their liability on to the issuer." *Id.* (citation omitted).

32.     Further, Luckin's ultimate contractual indemnity liability to the Underwriter Defendants is wholly separate and independent from the Underwriter Defendants' liability to the Winslow Plaintiffs for their violation of the U.S. securities laws and state common law. To view it otherwise would thwart the goal of Section 11 of the 1933 Securities Act in imposing liability on underwriters and others in an effort to ensure they are effective gatekeepers. Any claim that the Underwriter Defendants may have against the Foreign Debtor is one which would need to be *separately* pursued against Luckin based on issues relating to the scope and terms of the indemnity[12] – an issue entirely separate and distinct from the allegations in the Winslow Action.

---

[12] Of relevance, the indemnification here does not contain any advancement rights. Some or all of the Winslow Plaintiffs' claims may well be determined, by a court in a relevant jurisdiction far in

Indeed, the underwriting agreement as between the Underwriter Defendants and the Foreign

Debtor contains cross-indemnification provisions, with the Underwriter Defendants, too, owing

certain indemnification obligations to the Foreign Debtor.  (Bodnar Decl., Ex. C at 32-33.)[13]

Additionally, the Underwriter Defendants are likely one of many parties entitled to indemnification

by Luckin – as indemnification clauses are common in service-provider contracts.  To permit a

stay in litigation based purely on the existence of *some* indemnification obligation would be

unworkable.

33.     The situation in this case bears marked similarity to *New Jersey Carpenters Health

Fund v. Royal Bank of Scotland Grp., PLC*, 564 B.R. 192 (S.D.N.Y. 2016).  There, defrauded

investors filed a securities case against certain debtor defendants, as well as related individual

defendants and underwriter defendants.  Like here, the case concerned claims under Section 11 of

the 1933 Securities Act.  The debtor filed for Chapter 11 protection, and sought, as the Foreign

Debtor does here, to extend the automatic stay to the underwriter defendants and individual

defendants, purely on the basis of "the likelihood of future indemnification or contribution claims."

564 B.R. at 195.  The debtor in that case also cited *Queenie*, as does Foreign Debtor here.  And in

rejecting a stay for the nondebtor defendants, individual and underwriter alike, Judge Batts

concluded that "The mere possibility of a future indemnification claim will not support application

of the automatic stay, and Defendants have not provided Second Circuit authority to the contrary."

---

the future, to be outside the indemnity.  Without an advancement right, there is no "immediate"
consequence to the Foreign Debtor at all.  *See e.g., In re FPSDA I, LLC*, 2012 WL 6681794, at
*13 (with no "immediate" obligation to advance funds, denying request to extend stay to
nondebtors).

[13] The Foreign Debtor did not include the indemnification agreements in its motion, perhaps
because a review of the agreement shows it is not an "absolute" or complete indemnity, and
indemnifies the Underwriter Defendants only for specific conduct – and not simply all conduct
they engaged in with respect to the offerings.  The Winslow Plaintiffs believe the relevant
indemnity referred to is Exhibit C of the Bodnar Declaration, at 32-33.

*Id*.[14]  The situation here augurs even more strongly for this same result.

34.    Further, as the court in *In re SDNY 19 Mad Park, LLC* found in refusing to extend the automatic stay protections to a non-debtor, there is nothing in the record to indicate that the defense of the non-debtor in the position of the Underwriter Defendants would "not be as vigorous as if the Debtor remained a defendant."  2014 WL 4473873, at *2.  The only result of this Court's proper decision to deny the Foreign Representatives the relief they seek would be "[t]he possible liquidation of the amount of an indemnification claim," which "does not under the circumstances of this case provide grounds to extend the stay to [Underwriter Defendants]." *Id*.

35.    *Second*, as a practical matter, there will be no adverse economic consequences to the Foreign Debtor, or to its reorganization attempts, by the continuation of the Winslow Action. The Cayman Proceeding here has two potential paths: a restructuring, or a liquidation.  A restructuring, per the Foreign Representatives own timeline, will occur (if it does occur) well before the Winslow Plaintiffs could ever achieve a judgment[15] against the Underwriter Defendants under normal procedure and practice of the New York Supreme Court, Commercial Division.  The Foreign Representatives themselves have estimated, in their First Report to the Cayman Grand Court, that a restructuring would take from "1-1.5 years (from the date of appointment of the JPLs" – which is July 2021 to December 2021.  (*See* Lawson Decl., Ex. 1 at 32, Item 11.1.3)  As noted

---

[14] Recently, yet another court in this Circuit applied the reasoning of *New Jersey Carpenters* to deny a stay to nondebtors in a Chapter 11 proceeding, despite the existence of indemnification obligations.  *See Mardice v. Ebony Media Operations, LLC*, No. 19-CV-8910 (VSB), 2021 WL 146358, at *5 (S.D.N.Y. Jan. 15, 2021).

[15] Courts discussing the "unusual circumstances" in which the stay may be extended, when discussing indemnification rights focus on whether an "absolute" indemnification right exists "on account of any *judgment*".  *See In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794, at *7 (Bankr. E.D.N.Y. Dec. 21, 2012), *as corrected* (Dec. 26, 2012) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

above, the Underwriter Defendants have filed motions to dismiss the Winslow Action. Those motions will not be fully briefed until April 22, 2021, at the earliest. (Bodnar Decl., Ex. A ¶ 5.) Thus, the only "economic consequence" to the *Underwriter Defendants* (and not the Foreign Debtor) through at least April 22, 2021, is the costs of briefing. Even assuming that the New York Commercial Division denies the Underwriter Defendants' motions relatively swiftly – within six months, as an example – this still only represents the point where discovery is likely to effectively *begin* in earnest in the Winslow Action. Even in the exceptional scenario where the Winslow Plaintiffs brought summary judgment motions quickly, there is no case schedule where judgment is achieved in 2021.

36.     Practically, the restructuring or liquidation of Luckin will be determined long before the Winslow Plaintiffs ever achieve judgment against the Underwriter Defendants, and thus the continuation of the Winslow Action will have *no* impact on the restructuring (or decision to proceed with liquidation). *Cf. CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 34 (S.D.N.Y. 1990) (denying stay where "[t]his court believes the continuation of this action as against [nondebtor] will have no material effect upon [debtor's] reorganization effort.").

37.     *Third,* staying the Winslow Funds' Action as to the Underwriter Defendants will be prejudicial to the Winslow Funds. In the event that the restructuring is unsuccessful, or that a given restructuring does not extinguish claims against the Underwriter Defendants or certain Underwriter Defendants, the Winslow Plaintiffs will have lost significant time and expense in the interim. This is particularly acute as to the two Hong Kong-based Underwriter Defendants, for whom service is yet to be completed. The loss of time will only compound the difficult reality for defrauded shareholders that the liquidation of Luckin will put Luckin's assets in the PRC entirely

out of reach – leaving the Underwriters as the only true source of recovery.

38.     For all of the reasons set forth above, the relief requested in the Motion should be denied.

## **RESERVATION OF RIGHTS**

39.     The Winslow Plaintiffs further reserves the right to supplement and/or amend this Objection prior to the hearing on the Motion.

Dated: March 9, 2021                              Respectfully Submitted,

                                                  **ROLNICK KRAMER SADIGHI LLP**

                                                  */s/ Richard A. Bodnar*
                                                  Lawrence M. Rolnick, Esq.
                                                  Brandon Fierro, Esq.
                                                  Richard Bodnar, Esq.
                                                  1251 Avenue of the Americas
                                                  New York, New York 10020
                                                  T: 212-262-6700
                                                  F: 212-262-7402
                                                  lrolnick@rksllp.com
                                                  bfierro@rksllp.com
                                                  rbodnar@rksllp.com

                                                  *Counsel to the Winslow Plaintiffs*